Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Attorney for Plaintiff William Davis*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DAVIS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FINISAR CORPORATION, ROBERT N. STEPHENS, THOMAS E. PARDUN, MICHAEL C. CHILD, ROGER C. FERGUSON, JERRY S. RAWLS, HELENE SIMONET, MICHAEL L. DREYER, and MICHAEL E. HURLSTON, <br><br> Defendants. | Case No. 3:19-cv-00271 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

Plaintiff William Davis ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Finisar Corporation ("Finisar" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Finisar, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed acquisition (the "Proposed Transaction") of Finisar by II-VI Incorporated ("II-VI").

2.      On November 8, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which Finisar shareholders will receive for each share of common stock, at the shareholder's election and subject to proration, either: (i) $26.00 in cash; (ii) 0.5546 of a share of II-VI common stock; or (iii) a combination of (A) 0.2218 of a share of II-VI common stock and (B) $15.60 in cash, without interest (collectively, the "Merger Consideration").

3.      On December 28, 2018, in order to convince Finisar shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy false and/or misleading.

1

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

5.      In particular, the Proxy contains materially incomplete and misleading information concerning Finisar's financial projections, which were developed by the Company's management and relied on by the Board to recommend the Proposed Transaction.

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for contraventions of: (i) Rule 14a-9; and (ii) Regulation G, 17 C.F.R. § 244.100, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to Finisar shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Finisar is headquartered in this District.

2

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

**PARTIES**

11.     Plaintiff is, and at all relevant times has been, a Finisar shareholder.

12.     Defendant Finisar is a Delaware corporation and maintains its principal executive offices at 1389 Moffett Park Drive, Sunnyvale, California 94089.  Finisar's common stock is traded on the NASDAQ GS under the ticker symbol "FNSR."

13.     Individual Defendant Robert N. Stephens has been a director of the Company since 2005 and as Chairman of the Board since January 2018.

14.     Individual Defendant Thomas E. Pardun has been a director of the Company since 2009.

15.     Individual Defendant Michael C. Child has been a director of the Company since 2010.

16.     Individual Defendant Roger C. Ferguson has been a director of the Company since 1999.

17.     Individual Defendant Jerry S. Rawls has been a director of the Company since 1989.

18.     Individual Defendant Helene Simonet has been a director of the Company since 2017.

19.     Individual Defendant Michael L. Dreyer has been a director of the Company since 2015.

20.     Individual Defendant Michael E. Hurlston has been a director of the Company and its Chief Executive Officer since January 2018.

21.     The Individual Defendants and Finisar may collectively be referred to as "Defendants."  Each of the Individual Defendants herein is sued individually as well as in his or her capacity as an officer and/or trustee of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

3

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

**CLASS ACTION ALLEGATIONS**

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Finisar (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. According to the Proxy, as of December 19, 2018, there were approximately 117,733,459 shares of Finisar common stock outstanding, held by hundreds to thousands of individuals and entities throughout the country.  The actual number of public shareholders of Finisar will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without a presentation and reconciliation of those measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether the omission of the GAAP financial measures violates Section 14(a) of the Exchange Act;

iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading statements in the Proxy.

4

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

24.     Finisar is a provider of fiber optic subsystems and network performance test systems that provides its customers with high-speed data communications over local area networks and storage area networks in a variety of applications.

25.     On November 9, 2018, Finisar and II-VI announced the Proposed Transaction in a press release which states, in pertinent part:

PITTSBURGH & SUNNYVALE, Calif., November 9, 2018 (GLOBE NEWSWIRE) — II-VI Incorporated (NASDAQ:IIVI), a global leader in engineered materials and optoelectronic components, and Finisar Corporation (NASDAQ: FNSR), a global technology leader in optical communications, today announced that they have entered into a definitive merger agreement under which II-VI will acquire Finisar in a cash and stock transaction with an equity value of approximately $3.2 billion.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, Finisar's stockholders will receive, on a pro-rated basis, $15.60 per share in cash and 0.2218x shares of II-VI common stock, valued at $10.40 per share based on the closing price of II-VI's common stock of $46.88 on November 8, 2018. The transaction values Finisar at $26.00 per share, or approximately $3.2 billion in equity value and represents a premium of 37.7% to Finisar's closing price on November 8, 2018. Finisar shareholders would own approximately 31% of the combined company.

The combination of II-VI and Finisar would unite two innovative, industry leaders with complementary capabilities and cultures to form a formidable industry leading photonics and compound semiconductor company capable of serving the broad set of fast growing markets of communications, consumer electronics, military, industrial processing lasers, automotive semiconductor equipment and life sciences. Together, II-VI and Finisar will employ over 24,000 associates in 70 locations worldwide upon closing of the transaction.

"Disruptive megatrends driven by innovative uses of lasers and other engineered materials present huge growth opportunities for both of our companies," said Dr. Vincent D. Mattera, Jr., President and CEO, II-VI Incorporated. "In communications, materials processing, consumer electronics and automotive, we expect that the combination with Finisar will allow us to leverage our combined technology and intellectual property in InP, GaAs, SiC, GaN, SiP and diamond to achieve faster time to market, cost and scale. Together, we believe that we will be better strategically positioned to play a strong leadership role in the emerging markets of 5G, 3D sensing, cloud computing, electric and autonomous vehicles, and advanced microelectronics manufacturing."

Dr. Mattera continued, "We have long admired Finisar and have a great deal of regard for its founders and its talented global team. Our companies both have a long history of focusing on innovation, breakthrough solutions and competitive follow-through by manufacturing high quality products for our customers, and we look forward to welcoming Finisar to the II-VI family and further strengthening our competitive position in the industry."

"The combination of our state-of-the-art technology platforms, deep customer relationships, great assets and amazing talent will enhance our ability to hit market windows that won't stay open for long," said Michael Hurlston, Finisar's CEO. "This combination will accelerate our collective growth and will take advantage of the technology, products and manufacturing expertise that Finisar has uniquely developed over the course of its 30 year history."

Mr. Hurlston added, "We are extremely excited to combine Finisar with II-VI and together create a leader in photonics and compound semiconductors across all of the markets we serve. We are confident that the growth potential for the combined

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

company is substantial, and we believe that our respective shareholders will be able to enjoy significant potential for value creation when the transaction is completed."

**Compelling Strategic Rationale**

As a combined company, II-VI and Finisar will continue to leverage their leading-edge innovation and commercialization of complex technologies to maximize value through vertical integration and manufacturing scale. The core competencies of the two companies in innovation and manufacturing will complement each other at all levels of the value chain, including in the following strategic areas:

- **A Stronger Position in Optical Communications:** The combined company will provide a full line and scalable supply of high performance Datacom transceivers, products based on coherent transmission technology and ROADM solutions based on more than 30 years of industry leadership. It will market products into next-generation undersea, long-haul and metro networks, hyperscale datacenters and in 5G optical infrastructure.

- **Compelling Platform for 3D Sensing & LiDAR:** The combined optoelectronics technology leadership based on GaAs and InP compound semiconductor laser design platforms, together with one of the world's largest 6-inch vertically integrated epitaxial growth and device fabrication manufacturing platforms, will enable faster time to market for a greater number of opportunities in 3D sensing and LiDAR.

- **Combined Capabilities Unlock Access to Larger Markets:** The broad portfolio of differentiated engineered materials, including GaAs, InP, SiC, GaN and diamond together with a critical mass of optoelectronic, optical and integrated circuit device design expertise and related intellectual property, will unlock access to larger markets in RF devices for next-generation wireless and military applications, as well as power electronics for electric cars and green energy.

- **Maximizing Value Creation through Vertical Integration:** Deep vertical integration of core technologies ranging from engineered materials to high value-add solutions, enabled by differentiated components, will provide the combined company with a strong foundation to capitalize on a broad range of emerging opportunities while making the overall markets even more competitive.

**Driving Enhanced Financial Performance**

In addition to the compelling strategic benefits, the combination of II-VI and Finisar will:

7

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

- **Accelerate Revenue Growth:** On a pro forma basis, the combined company had approximately $2.5 billion of annual revenue. The combined broad base of talent, technology and manufacturing is expected to enhance the ability to better address near-to medium-term opportunities and accelerate revenue growth.

- **Provide Significant Synergy Potential:** The combined company expects to realize $150 million of run-rate cost synergies within 36 months of closing. Synergies are expected to be achieved from procurement savings, internal supply of materials and components, efficient research and development, consolidation of overlapping costs and sales and marketing efficiencies.

- **Strengthen Earnings Accretion:** The transaction is expected to drive accretion in Non-GAAP earnings per share for the first full year post close of approximately 10% and more than double that thereafter.

**Transaction Details**

II-VI intends to fund the cash consideration with a combination of cash on hand from the combined companies' balance sheets and $2 billion in funded debt financing. The transaction is expected to close in the middle of calendar year 2019, subject to approval by each company's shareholders, antitrust regulatory approvals and other customary closing conditions.

**Management and Board of Directors**

Upon closing of the transaction, Dr. Mattera will continue to serve as President and CEO of the combined company.

In addition, in connection with the closing of the transaction, three Finisar board members will be appointed to the II-VI Board, which will be expanded to 11 directors.

**The Materially Incomplete and Misleading Proxy**

26.     On December 28, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's

8

shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### The Materiality of Financial Projections

27.     A company's financial forecasts are material to a board of directors in determining whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the financial forecasts were relied on to approve the Merger Agreement and recommend the Proposed Transaction to shareholders, as the Proxy discloses that the financial forecasts were "prepared by, and are the responsibility of, Finisar management . . . and were approved by the Finisar Board[.]"  Proxy 119.

28.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regard to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

29.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  *Id.*

30.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors

9

should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

(ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

31.     Here, Finisar's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board considered "the prospects and likelihood of realizing superior benefits through remaining an independent company, risks associated with remaining an independent company, and possible alternative business strategies[.]" Proxy 94.

32.     As discussed further below, the non-GAAP financial projections here do not provide Finisar's shareholders with a materially complete understanding of the assumptions and key factors considered in developing the Forecasts, which assumptions, factors and other inputs the Board reviewed.

### The Financial Projections are Materially Incomplete

33.     As mentioned above, the Proxy discloses that "[i]n connection with Finisar's evaluation of strategic alternatives and a possible business combination transaction involving Finisar, in August 2018, Finisar prepared certain unaudited projections and estimates of future

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

financial and operating performance with respect to Finisar's fiscal years ending in 2019, 2020 and 2021." *Id.* at 119. The Proxy discloses summaries of the aforementioned financial projections.

34. The first summary discloses several non-GAAP financial measures, including Gross Margin, Gross Profit, Total Operating Expenses, Operating Income, Operating Margin, EBITDAS, Pre-Tax Income, Net Income, and Fully Diluted EPS. *Id.* at 119.

35. In a footnote, the Proxy further discloses that "Finisar has historically calculated financial information on a non-GAAP basis" due to the exclusion of, *inter alia*:

> (i) amortization of acquired technology (non-cash charges related to technology obtained in acquisitions); (ii) stock-based compensation expense (non-cash charges); (iii) impairment of long-lived/intangible assets (non-cash charges); (iv) reduction in force costs and other restructuring charges (non-core cash charges); (v) acquisition related retention payments (non-core cash charges); (vi) inventory write-offs related to discontinued products (non-cash charges); (vii) discontinued product services fees (non-core cash charges); (viii) duplicate facility costs during facility move (non-core cash charges); (ix) acquisition related costs (non-core cash charges); (x) litigation settlements and resolutions and related costs (non-core cash charges); (xi) amortization of purchased intangibles (non-core, non-cash charges); (xii) start-up cash costs related to Finisar's Sherman VCSEL fab until Finisar begins commercial production; (xiii) imputed interest expenses on convertible debt (non-cash charges); (xiv) imputed interest related to restructuring (non-cash charges); (xv) other interest income (non-core benefits); (xvi) gains and losses on sales of assets and other miscellaneous (non-cash losses and cash gains related to the periodic disposal of assets no longer required for current activities); (xvii) loss (gain) related to minority investments (non-core charges or benefits); (xviii) dollar denominated foreign exchange transaction losses (gains) (non-cash charges or benefits); and (xix) amortization of debt issuance costs (non-cash charges).

*Id.* at 119-20. The footnote further discloses that the financial projections "have adjusted non-GAAP income and non-GAAP income per share for the difference between GAAP income taxes and non-GAAP income taxes." *Id.*

36. The second summary discloses additional non-GAAP financial projections, including Non-GAAP EBIT, NOPAT, and Unlevered Free Cash Flow ("UFCF"). *Id.* at 120.

37. The Proxy further discloses that UFCF was "derived from the Finisar management projections" and "calculated by starting with net operating profit after tax, or NOPAT, and adding

11

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

1  back depreciation and then subtracting change in net working capital and capital expenditures."

2  *Id.* at 120.

3        38.    Despite disclosing that the Company makes at least nineteen (19) adjustments to its

4  financial projections, if not more, the Proxy fails to disclose how any of the measures were

5  calculated (other than UFCF), nor does the Proxy disclose the values of the line item adjustments

6  disclosed, rendering the Proxy materially false and/or misleading.

7        39.    Thus, the Proxy's disclosure of these non-GAAP financial projections provides an

8  incomplete and materially misleading understanding of the Company's future financial prospects

9  and the inputs and assumptions for which those prospects are based upon.  It is clear that those line

10  items were in fact forecasted and utilized in calculating the non-GAAP measures disclosed and

11  relied on by the Board to recommend the Proposed Transaction, in violation of Section 14(a) of

12  the Exchange Act.

13        40.    The financial projections disclosed on pages 119-20 of the Proxy violate Section

14  14(a) of the Exchange Act because:  (1) the use of such forecasted non-GAAP financial measures

15  alone violates SEC Regulation G as Defendants failed to reconcile those non-GAAP measures to

16  their closest GAAP equivalents or otherwise disclose the specific financial assumptions and inputs

17  used to calculate the non-GAAP measures; and (2) they violate SEC Regulation 14a-9 because

18  they are materially misleading as shareholders are unable to discern the veracity of the financial

19  projections.  As such, this information must be disclosed in order to cure the materially misleading

20  disclosures regarding both the financial projections developed by the Company as well as the

21  projections relied upon by the Company's financial advisors.

22

23

24

25

26

27

28

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

*The Financial Projections Violate Regulation G*

41.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]

42.     Defendants must comply with Regulation G.  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

43.     Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. § 244.101(a)(1).

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002), *available at* https://www.sec.gov/rules/final/33-8176.htm (last visited Jan. 16, 2019) ("SEC, *Final Rule*").

[4]     SEC, *Final Rule.*

[5]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited Jan. 16, 2019); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited Jan. 16, 2019).

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

use by publicly traded companies of unique, company-specific non-GAAP financial measures implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

44.     The SEC has required compliance with Regulation G, including the reconciliation requirement in other merger transactions. *Compare Youku Tudou Inc., et al.*, Correspondence 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP financials relating to a business combination),[7] with *Youku Tudou Inc., et al.*, SEC Staff Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*, Correspondence 29 (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation

---

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted) (last visited Jan. 16, 2019).

[7]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm (last visited Jan. 16, 2019)

[8]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf (last visited Jan. 16, 2019)

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

of actual and projected EBIT to GAAP net income . . . .").[9]

45.    Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9

46.    In addition to the Proxy's violation of Regulation G, the lack of reconciliation or, at the very least, the line items utilized in calculating the non-GAAP measures renders the financial forecasts disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading for the reasons discussed above.

47.    Moreover, the Forecasts are clearly material since the Board considered the Company's "prospects and likelihood of realizing superior benefits through remaining an

---

[9]    *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/filename1.htm (last visited Jan. 16, 2019).  *See also Actel Corporation*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial measures.  Please revise to provide the disclosure required by Rule 100 of Regulation G.").  *Available at* https://www.sec.gov/Archives/edgar/data/907687/00000000001 0060087/filename1.pdf (last visited Jan. 16, 2019).  *See also The Spectranetics Corporation*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4. The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the reconciliation required under Rule 100(a) of Regulation G").  *Available at* https://www.sec.gov/Archives/edgar/data/789132/0000000000 17025180/filename1.pdf (last visited Jan. 16, 2019).  The SEC Office of Mergers and Acquisitions applied Regulation G in these transactions, which reflect the SEC's official position.  Any claim that the SEC has officially sanctioned the use of non-GAAP financial forecasts for business combinations when the Board itself created and relied on such non-GAAP forecasts to recommend a transaction such at the Proposed Transaction, is incorrect. The SEC's website provides certain unofficial guidance for certain matters, called Compliance and Disclosure Interpretations ("C&DI"), which through the use of Q&As reflect the views of particular SEC staff and on which certain issuers have in the past claimed an exemption from Regulation G.  The SEC itself expressly disclaims C&DIs as they are not regulations that have been reviewed by the SEC, and the SEC expressly states that they are not binding and should not be relied on.  *See* www.sec.gov/divisions/corpfin/cfguidance.shtml (last visited Jan. 16, 2019).

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

independent company" in recommending shareholders vote in favor of the Proposed Transaction, Proxy 94.  As such, shareholders would clearly want a complete and non-misleading understanding of those Forecasts.

48.     In order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 119-20, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

49.     In sum, the Proxy independently violates: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction.

50.     Absent disclosure of the foregoing material information prior to the special shareholder meeting, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

16

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

53.     As set forth above, the Proxy omits material information required by SEC Regulation G, 17 C.F.R. § 244.100, which therefore constitutes an independent violation of Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

54.     The failure to reconcile the numerous material non-GAAP financial measures included in the Proxy is a violation of Regulation G and constitutes a violation of Section 14(a).

55.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

56.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in Proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]"

17

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

1   17 C.F.R. § 240.14a-9.

2       59.    Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing]

3 public a non-GAAP financial measure that, taken together with the information accompanying that

4 measure . . . contains an untrue statement of a material fact or *omits to state a material fact*

5 *necessary in order to make the presentation of the non-GAAP financial measure . . . not*

6 *misleading*." 17 C.F.R. § 244.100(b) (emphasis added). The SEC's official public position is to

7 enforce Regulation G in merger transactions by compelling target companies to amend solicitation

8 material, including proxies, to comply with Regulation G.

9       60.    Defendants have issued the Proxy with the intention of soliciting shareholder

10 support for the Proposed Transaction. Each of the Defendants reviewed and authorized the

11 dissemination of the Proxy, which fails to provide critical information regarding, amongst other

12 things, the financial projections for the Company.

13       61.    In so doing, Defendants made untrue statements of fact and/or omitted material

14 facts necessary to make the statements made not misleading. Each of the Individual Defendants,

15 by virtue of their roles as directors, were aware of the omitted information but failed to disclose

16 such information, in violation of Section 14(a). The Individual Defendants were therefore

17 negligent, as they had reasonable grounds to believe material facts existed that were misstated or

18 omitted from the Proxy, but nonetheless failed to obtain and disclose such information to

19 shareholders although they could have done so without extraordinary effort.

20       62.    The Individual Defendants knew or were negligent in not knowing that the Proxy

21 is materially misleading and omits material facts that are necessary to render it not misleading.

22 The Individual Defendants undoubtedly reviewed and relied upon the omitted information

23 identified above in connection with their decision to approve and recommend the Proposed

24 Transaction.

25

26

27

---

18

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

28

63.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

64.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

65.     Finisar is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

66.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

67.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)

68.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69.     The Individual Defendants acted as controlling persons of Finisar within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

19

officers and/or directors of Finisar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

70.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing the Proxy.

72.    In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

73.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

20

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

1   Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

2   result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

3        75.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

4   of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

5   and irreparable injury that Defendants' actions threaten to inflict.

6   **PRAYER FOR RELIEF**

7       **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

8       A.    Declaring that this action is properly maintainable as a Class Action and certifying

9   Plaintiff as Class Representative and his counsel as Class Counsel;

10       B.    Enjoining Defendants and all persons acting in concert with them from proceeding

11   with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction,

12   unless and until the Company discloses the material information discussed above which has been

13   omitted from the Proxy;

14       C.    Directing Defendants to account to Plaintiff and the Class for all damages sustained

15   as a result of their wrongdoing;

16       D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable

17   attorneys' and expert fees and expenses; and

18       E.    Granting such other and further relief as this Court may deem just and proper.

19   **JURY DEMAND**

20       Plaintiff demands a trial by jury on all issues so triable.

21   Dated:  January 16, 2019

22                      Respectfully submitted,

23                      **FARUQI & FARUQI, LLP**

24   **OF COUNSEL:**             By: */s/ Benjamin Heikali*
                   Benjamin Heikali, Bar No. 307466

25   **FARUQI & FARUQI, LLP**      10866 Wilshire Blvd., Suite 1470

26                      Los Angeles, CA 90024

21

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

Tel.: (424) 256-2884
Fax: 424.256.2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:19-cv-00271